## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **Jose M. Valdez and** | § | |
| **Josefina Valdez** | § | **Case No.:  09-cv-00246** |
| **Plaintiffs** | § | |
| **v.** | § | |
| **Capital Management Services, LP dba Capital** | § | |
| **Receivables  Management Services, LP** | § | |
| **Cavalry Portfolio Services, LLC** | § | |
| **National Action Financial Services  Inc.** | § | |
| **CMS General Partner LLC** | § | |
| **Travelers Casualty and Surety Company of** | § | |
| **America** | § | |
| **Hartford Fire Insurance Company** | § | |
| **Defendants** | § | |

## PLAINTIFFS' ORIGINAL MOTION TO COMPEL

Plaintiffs file this original motion to compel discovery answers from defendants Cavalry Portfolio Services, LLC ("Cavalry") and, to a lesser degree, National Action Financial Services  Inc. ("NAFS"), and Capital Management Services, LP ("CMS"). Far and away, Cavalry has been the defendant most recalcitrant in its refusal to answer discovery. This motion therefore is directed primarily towards Cavalry. In stark contrast to Cavalry, NAFS and CMS have, by and large, adequately responded to plaintiffs' discovery requests, except as to the production of documents they unilaterally consider confidential.  Plaintiffs seek to compel, with the entry of the agreed protective order [DE 41], the documents that NAFS and CMS have refused to produce due to their unilateral assertion of confidentiality. Defendant NAFS has indicated it will require an order compelling production, even with the entry of the agreed protective order. CMS has indicated it will voluntarily produce some documents with entry of the agreed protective order, but that Cavalry is objecting to CMS releasing the collection agreement between Cavalry and CMS because of the

- 1 –

confidentiality provision of that contract between those parties. Cavalry will not state whether it will produce documents even with the entry of the agreed protective order.  As the documents are already in the possession of counsel for defendants and as the parties are seeking to arrange depositions in the next few weeks, plaintiffs seek an order compelling amended responses and production within 3 days of the court's order on this motion.

### A.    PROCEDURAL HISTORY

1.   On October 26, 2010 plaintiffs filed suit against defendants for violations of the Fair Debt Collection Practices Act ("FDCPA"), and for related claims. The claims arise from the defendants' following conduct: attempting to collect a debt that is the result of identity theft, and thus is not owed; continuing to collect on the debt after being placed on notice that the debt was not owed; forwarding the fraudulent debt from one collector to another despite being placed on notice that the debt was the result of identity theft; failing to disclose when transferring the debt from one collector to another that plaintiffs asserted that the debt was the result of identity theft and provided proof of the same in the form of an identity theft affidavit, a police report, proof of address, and other documents; making ex parte contacts with a represented consumer; and other acts.

2.   On October 27, 2010 the court issued an Order for Conference and Disclosure of Interested Parties [DE 2].

3.   On December 9, 2009 an answer [DE 11] was filed by defendant Capital Management Services, LP dba Capital Receivables  Management Services, LP, its general partner CMS General Partner LLC, and its bonding company Travelers Casualty and Surety Company of America (collectively "CMS").

4.   On December 11, 2009 an answer [DE 13]  was filed by defendant National Action Financial Services, Inc. and its bonding company Hartford Fire Insurance Company (collectively "NAFS"). The answer included *twenty three* affirmative defenses.

5.   On December 14, 2009 an answer [DE 14]  was filed by defendant Cavalry Portfolio Services, LLC ("Cavalry"). In the answer, Cavalry stated it was raising thirteen "affirmative defenses."

6.   On December 18, 2009 plaintiff Mr. Valdez served on defendants a first set of discovery.  All defendants requested extensions to answer discovery, and plaintiffs gave extensions to all defendants.

7.   Specifically, on January 20, 2010 plaintiffs gave defendant Cavalry an extension of 30 days to serve formal discovery responses in consideration for providing certain information. As explained in detail below, Cavalry has breached this agreement. Cavalry produced for four pages of "account notes."

8.   On January 25, 2010 NAFS served original answers to Mr. Valdez's 1st set of discovery requests, and amended answers on March 15, 2010.

9.   On February 9, 2010 plaintiff Mrs. Valdez served on defendants her 1st Set of Discovery Requests.

10. On February 19, 2010 Cavalry served original answers to Mr. Valdez's 1st set of discovery, producing no additional documents.

11. On March 11, 2010 NAFS served original answers to Mrs. Valdez's 1st set of discovery.

- 3 –

12. On March 15, 2010 Cavalry served original answers to Mrs. Valdez's 1st set of discovery.

**B.**     **Exhibits attached to Motion**

13.   The following exhibits are attached to this motion and are incorporated by reference.

**TABLE OF CONTENTS TO EXHIBITS**

| Description | Page # |
|---|---|
| Emails reflecting agreement to extend Cavalry's deadline to answer | MTC 1 – 7 |
| Cavalry Amended Answers to Mr. Valdez's 1st Set of Discovery | MTC 8 – 34 |
| Cavalry Answers to Mrs. Valdez's 1st Set of Discovery | MTC 35 – 49 |
| Cavalry Answers to Mrs. Valdez's 2nd Set of Discovery | MTC 50 – 59 |
| Cavalry "Account Notes" (ending on 5/16/2008) | MTC 60 – 63 |
| NAFS Answers to Mr. Valdez's 1st Set of Discovery | MTC 64 – 97 |
| NAFS Amended Answers to Mrs. Valdez's 1st Set of Discovery | MTC 98 – 113 |
| NAFS Notice of Withheld Documents [DE 33] | MTC 114 – 116 |
| CMS Amended Rule 26 Disclosures | MTC 117 – 120 |
| CMS Notice of Withheld Documents | MTC 121 – 122 |
| CMS Amended Answers to Mr. Valdez's 1st Set of Discovery | MTC 123 – 140 |
| CMS Answers to Mrs. Valdez's 1st Set of Discovery (CMS entitled the responses as answers to "plaintiff's 2nd discovery requests") | MTC 141 – 148 |
| Attempts to confer with Cavalry | MTC 149 – 179 |
| Attempts to confer with NAFS | MTC 180 – 187 |

**C.**     **Overview of discovery issues**

14. The single biggest issue in this case is who said what to whom, and when, regarding plaintiffs and regarding the fraudulent debt that the defendants sought to collect from plaintiff Mr. Valdez, the victim of identity theft.   Also of importance is how the information was transmitted, what documents reflect those transmissions, and what representations were made from one debt collector to another as to the accuracy of the information being transmitted. This is the basic thrust of most of the discovery sought from defendants, and for which Cavalry, far more than any other party, has been stonewalling.

### D.   Cavalry has not complied with its discovery agreement, waiving all objections, compelling answers and deeming admissions

15. On December 18, 2009 plaintiffs served Cavalry (and all defendants) Mr. Valdez's 1st set of discovery requests. On January 20, 2010 plaintiffs gave defendant Cavalry a 30 day extension to serve formal discovery answers. In consideration for the extension, Cavalry agreed it would, prior to the January 26, 2010 initial conference with the court, disclose Cavalry's communications with the other defendants regarding plaintiffs and the alleged account that defendants were seeking to collect; produce the documents reflecting those communications; disclose the relationship between the defendants; disclose the relationship of the related Cavalry entities in regards to the alleged debt (e.g., owner of the debt, servicer of the debt). The agreement is reflected in the emails attached to this motion.[1] To date, Cavalry has almost entirely failed to provide this information and to produce documents reflecting this information.

16. On January 24, 2010 Cavalry served a four page document entitled "account notes." [MTC 60

---

1 Specifically, see MTC 4 (Keshavarz email of January 20, 2010 at 4:51 PM),  MTC 3 (Mitchell email of January 20, 2010, 5:55 PM), and MTC 2 (Keshavarz email of January 25, 2010 at 6:48 PM).

– 63] However, the entries for the account notes end on May 16, 2008, and make no reference *whatsoever* to communications with the other defendants. According to the discovery responses Cavalry communicated with them after May 16, 2008. Specifically, CMS and NAFS state that Cavalry forwarded information regarding the alleged debt and failed to disclose that plaintiff Mr. Valdez was represented by counsel; failed to disclose that Mr. Valdez disputed the debt; and failed to disclose that plaintiff Mr. Valdez sent Cavalry an identity theft affidavit, a police report, and documentary evidence that some of the alleged information on the putative credit application was false. See CMS discovery answers MTC 126 # 7, MTC 129 – 131 # 4, 7, 8, 11, 12; NAFS discovery answers MTC 69 # 3, MTC 78 – 81 # 4, 7, 1, 15.

17. Indeed, Cavalry has further breached its agreement by refusing to answer interrogatories requesting the communications between it and defendants regarding the alleged debt; objecting to requests for admission regarding those communications; refusing to produce documents reflecting the relationship between it and the other defendants; refusing to answer interrogatories regarding its relationship with the other Cavalry entities in relation to plaintiffs and the alleged debt; and refusing to produce documents reflecting those relationships. MTC 14 (#8 interrogatory, Mr. Valdez 1st Set of Discovery),[2] MTC 19 – 21 (# 9 – 17 requests for admission, Mr. Valdez 1st set of discovery), MTC 29, 30 (# 29, 30 request for production, Mrs. Valdez 1st set of discovery); [3] MTC 48 (# 4

---

2  Interrogatory # 8.  For any communication you had or attempted to have with anyone  regarding the fraudulent debt or either Plaintiff, please state:

       a.     State the date and time each communication;
       b.     What was stated in each communication;
       c.     State the name, title and contact information for the person or persons who made each communication, and the company, if any, each person was making the communication on behalf of;
       d.     What actions, if any were made in response to the communication;

3  Mr. Valdez 1st production requests to Cavalry:

request for production, Mrs. Valdez's 2nd set of discovery).[4]

18. Therefore, plaintiffs that the court hold Cavalry has breached its discovery agreement, and, as such, has waived any objections, and that the requests for admission are deemed admitted.

### E.   Compelling documents withheld due to "confidentiality" now that agreed protective order has been filed [DE 41]

19. In order to expedite the production of documents, plaintiffs agreed to the entry of a protective order [DE 41] for all defendants. Under the terms of the agreement, if any party believes in good faith that certain information is confidential, the party merely need designate it as such. If, after the production of the information any party believes the information is not confidential, the withholding party must demonstrate that it meets its burden to show the information should remain confidential. [DE 41 § 10][5]

20. Incredibly, even with the entry of an agreed protective order, defendants are still refusing to produce key pieces of information. This includes discovery requests where defendants have specifically stated that they would produce the information upon the entry of a protective order. Therefore, plaintiff moves to compel the following documents which defendants have objected

---

RFP # 29. If you contend that, at any time, the fraudulent debt was assigned to you, please provide the documents upon which you base that assertion. For example, please include any sales, assignment or servicing agreements.
RFP # 30.  If you contend that, at any time, you were the servicer of the fraudulent debt, please provide the documents upon which you base that assertion. For example, please include any sales, assignment, or servicing agreements.

**4**  RFP # 4.The contracts, if any, between you and Cavalry SPV, I, LLC Cavalry SPV, II, LLC or Cavalry Investments, LLC that you contend governs your collection of the alleged debt. This includes any contracts assigning the debt or servicing the debt.

5 In order to be confidential, "the information of the most sensitive nature, which if disclosed to persons of expertise in the area would reveal significant technical or business advantages of the producing or designating party, and which includes as a major portion subject matter which is believed to be unknown to the opposing party or parties, or any of the employees of the corporate parties."

to producing on the grounds that the documents were private, confidential, proprietary, trade secret, or that their production violate constitutional or privacy rights. The documents to be produced by defendants include contracts between the parties and with third parties governing the collection of the alleged debt; the policy and procedure manuals of the defendants relating to the collection of debts; the documents upon which defendants base the affirmative defense of bona fide error; the manuals, if any, for the collections software defendants used in an attempt to collect the alleged debt; and documents reflecting net assets for the two years prior to the filing of this lawsuit, and the calculation thereof; and the insurance policies of defendants. Without limitation, this specifically includes documents, if any, responsive to the following document production requests:

    a.  **For defendant Cavalry Portfolio Services**, production request:

       (1) # 1, 15, 26, 29, 30, 42 of Mr. Valdez's 1st RFP.[6] [MTC 23, 26, 28 – 30, 33]

       (2) # 1, 2, 3, 4, 5 of Mrs. Valdez's 1st RFP.[7] [MTC 47 – 49]

---

6  Mr. Valdez 1st request for production to Cavalry:

    RFP # 1. Your insurance policy, if any.
    RFP # 15.  A document reflecting the name of the vendor, if any, you contend sent any document to either Plaintiff.
    RFP # 25.This suit seeks exemplary and punitive damages. One factor to be considered in the award of such damages is the net assets of the Defendant. Therefore, please produce one or more documents showing your net worth over the past 3 years, both on an accrual and cash basis, and how that amount was calculated.
    RFP # 26. If any of the documents you produce use abbreviations or codes, please provide a copy of a manual or other such document that reflects the meaning of said abbreviations or codes.
    RFP # 29. If you contend that, at any time, the fraudulent debt was assigned to you, please provide the documents upon which you base that assertion. For example, please include any sales, assignment or servicing agreements.
    RFP # 30.  If you contend that, at any time, you were the servicer of the fraudulent debt, please provide the documents upon which you base that assertion. For example, please include any sales, assignment, or servicing agreements.
    RFP # 42. All documents upon which you base your assertion of bona fide error, including all training manuals, policy manuals and evaluations.

- 8 –

(3) # 4 Mrs. Valdez's 2nd RFP.[8] [MTC 55]

b. **For defendant National Action Financial Services**, production request:

(1) # 15, 25, 30, 42 Mr. Valdez's 1st RFP.[9] [MTC 88, 91 – 93, 96, 97]

(2) # 1, 2, 3, 4, 5 of Mrs. Valdez's 1st RFP.[10] [MTC 111 - 113]

---

**7**  Mrs. Valdez 1st request for production to Cavalry:
RFP # 1. The manuals for the collections software you used in your collection attempts as to Mr. Valdez, particularly as reflected in the case notes and dunning letter you have produced.
RFP # 2.The manuals for the collections software you used in your collection attempts as to Mr. Valdez, particularly as reflected in the case notes and dunning letter you have produced.
RFP # 3.The manuals for the software used to transfer the information regarding Mr. Valdez and/or the fraudulent debt transferred between you and any other defendant in this case, to any credit reporting agency, or to any other third party.
RFP # 4.The contract with any other co-defendant or any third-party that you contend governs your collection of the fraudulent debt. This includes any contracts assigning the debt or servicing the debt.
RFP # 5.The contract with any other co-defendant or any third-party that you contend governs your collection of the fraudulent debt.

**8**  RFP # 4.The contracts, if any, between you and Cavalry SPV, I, LLC Cavalry SPV, II, LLC or Cavalry Investments, LLC that you contend governs your collection of the alleged debt. This includes any contracts assigning the debt or servicing the debt.

**9** Mr. Valdez's 1st RFP to NAFS:
RFP # 15.  A document reflecting the name of the vendor, if any, you contend sent any document to either Plaintiff.
RFP # 25. This suit seeks exemplary and punitive damages. One factor to be considered in the award of such damages is the net assets of the Defendant. Therefore, please produce one or more documents showing your net worth over the past 3 years, both on an accrual and cash basis, and how that amount was calculated.
RFP # 30. If you contend that, at any time, you were the servicer of the fraudulent debt, please provide the documents upon which you base that assertion. For example, please include any sales, assignment, or servicing agreements.
RFP # 42. All documents upon which you base your assertion of bona fide error, including all training manuals, policy manuals and evaluations.

**10**  Mrs. Valdez 1st request for production to NAFS:
RFP # 1. The manuals for the collections software you used in your collection attempts as to Mr. Valdez, particularly as reflected in the case notes and dunning letter you have produced.
RFP # 2.The manuals for the collections software you used in your collection attempts as to Mr. Valdez, particularly as reflected in the case notes and dunning letter you have produced.
RFP # 3.The manuals for the software used to transfer the information regarding Mr. Valdez and/or the fraudulent debt transferred between you and any other defendant in this case, to any credit reporting agency, or to any other third party.
RFP # 4.The contract with any other co-defendant or any third-party that you contend governs your collection of the fraudulent debt. This includes any contracts assigning the debt or servicing the debt.

(3) Documents referenced in NAFS' "Notice of Withheld Documents." [DE 33] [MTC 114 – 116] (i.e., "A collection agreement between Cavalry Portfolio Services, LLC, and any and all of its affiliates, subsidiaries or related business entities, including but not limited to Cavalry SPV I, LLC, Cavalry SPV II, LLC and Cavalry Investments, LLC and National Action Financial Services, Inc., dated January 13, 2006.")

c. **For defendants Capital Management Services, LP** dba Capital Receivables Management Services, LP and CMS General Partner LLC, production request:

(1) # 16, 21, 25, 31, 42 of Mr. Valdez 1st RFP.[11] [MTC 135- 137, 139]

(2) Documents referenced in CMS' Notice of Withheld Documents [MTC 121, 122] (i.e., CMS contract with Cavalry dated July 22, 2002, CMS incoming-outgoing file policy, and Cavalry correspondence handling policy).

(3) # 1 - 6 of Mrs. Valdez's 1st RFP.[12] [MTC 146, 147] (CMS served its answers to

---

RFP # 5. The contract with any other co-defendant or any third-party that you contend governs your collection of the fraudulent debt.

11 Requests for production to CMS:
  RFP # 16.  Any joint defense agreement with any other party to this suit.
  RFP # 21. Documents reflecting communications you received from or provided to any defendant in this case prior to the date of this lawsuit.
  RFP # 25. This suit seeks exemplary and punitive damages. One factor to be considered in the award of such damages is the net assets of the Defendant. Therefore, please produce one or more documents showing your net worth over the past 3 years, both on an accrual and cash basis, and how that amount was calculated.
  RFP # 31. The documents upon which you base any affirmative defenses, if any.
  RFP # 42.  All documents upon which you base your assertion of bona fide error, including all training manuals, policy manuals and evaluations.

12 Request for production to CMS:
  RFP # 1. The manuals for the collections software you used in your collection attempts as to Mr. Valdez, particularly as reflected in the case notes and dunning letter you have produced.
  RFP # 2.  The manuals for the collections software you used in your collection attempts as to Mr. Valdez, particularly as reflected in the case notes and dunning letter you have produced.
  RFP # 3. The manuals for the software used to transfer the information regarding Mr. Valdez and/or the fraudulent debt transferred between you and any other defendant in this case, to any credit reporting agency, or to any other third party.
  RFP # 4. The contract with any other co-defendant or any third-party that you contend governs your collection of the fraudulent debt. This includes any contracts assigning the debt or servicing the debt.

these requests on March 15, 2010, but entitled the responses as answers to "plaintiff's 2nd discovery requests" (answered on March 15, 2010) .

### F. Compelling responses to interrogatories with objections on the grounds of "confidentiality"

21. Cavalry objects to the following interrogatory requests of Mrs. Valdez's 1st set of discovery requests "to the extent to which it seeks proprietary or confidential information: interrogatory 4 (how information is transferred between defendants, and to credit reporting agencies), and interrogatory 5 (the software used to collect the alleged debt).[13] [MTC 42] In light of the agreed protective order [DE 41], the court should overrule these objections and compel answers.

### G. Compelling documents and interrogatory answers withheld based on objection of "relevance" and other boilerplate objections.

22. To virtually every request for production of documents, Cavalry has objected that the request was overbroad, unduly burdensome and harassing. Boilerplate objections waives all objections, even otherwise valid objections. Therefore, the court should overrule all of Cavalry's objections and order full production of responsive documents. Specifically, this applies to Mr. Valdez's 1st Set of Discovery, production request # 6 – 12, 15, 19 – 37, 39 – 42. [MTC 23- 33]

23. Further, Cavalry must not only state whether the documents are in its possession, but also whether they are with its custody or control. F.R.C.P. 34(a)(1). If a party has a legal right to

---

RFP # 5. The contract with any other co-defendant or any third-party that you contend governs your collection of the fraudulent debt.
 RFP # 6.  The contract that governs the relationship between Capital Management Services, LP dba Capital Receivables  Management Services, LP and CMS General Partner LLC.

13 Interrogatory # 4. How exactly was the information regarding Mr. Valdez and/or the fraudulent debt transferred between you and any other defendant in this case, to any credit reporting agency, or to any other third party? What is the name of the software you use to transfer the information, and delineate each step in the process.
Interrogatory # 5. What computer software did you use in your collection attempts as to Mr. Valdez, particularly as reflected in the case notes and dunning letter you have produced.

obtain the documents, it has "control" of the documents, even if they are in the possession of a nonparty. Flagg v. City of Detroit, 252 F.R.D. 346, 355 (E.D.Mich.2008); Riddell Sports Inc. v. Brooks,  158 F.R.D. 555, 558 (S.D.N.Y.1994). According to the discovery response of NAFS, the collection agreement regarding the alleged account is not only with Cavalry, but also with "its affiliates, subsidiaries or related business entities, including but not limited to Cavalry SPV I, LLC, Cavalry SPV II, LLC and Cavalry Investments, LLC." [MTC 112 (#4 request for production of Mrs. Valdez's 1st set of discovery]. Therefore, the court should order defendant Cavalry Portfolio Services, LLC to produce documents responsive to plaintiff's discovery requests even if they are in the possession of the related entity, such as Cavalry SPV I, LLC, Cavalry SPV II, LLC and Cavalry Investments, LLC, *to the degree* Cavalry Portfolio Services, LLC has "possession, custody or control" of that information, including a legal right to obtain said information, though contract or otherwise.

24. Correspondence from Cavalry's counsel[14] suggests that Cavalry does not believe electronically stored or transferred information constitutes "documents" that are required to be produced.[15] Plaintiffs seek an order compelling production of responsive documents, including

---

14  MTC 2, 1. In response to a request for document production, counsel for defendant Cavalry stated in an email, "There are no documents.  It is all done electronically.  There is not reporting.  There is nothing to produce." Email of January 25, 2010. In subsequent telephone conversations and letters, counsel for Cavalry would not clarify whether its position was that electronically stored information do not constitute documents and therefore do not need to be produced.

15 The definition section of plaintiffs' discovery requests defined documents as follows: 15. "Document" means all written, typed, or printed matters, and all magnetic, electronic, or other records or documentation of any kind or description (including, without limitation:  letters, correspondence, telegrams, memoranda, notes, records, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, e-mail, microfilm, bulletins, circulars, pamphlets, photographs, facsimiles, invoices, tape recordings, computer printouts, and work sheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, and all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature, in your actual possession, custody, or control, including those in the possession, custody, or control of any and all present or former directors,

electronically stored or transferred information.

25. Many of Cavalry's discovery responses limit its disclosure to two years prior to the filing of this complaint. Cavalry unilaterally claims anything prior to that time is irrelevant. See. e.g. MTC 19, 20 (# 9 – 12, 17 requests for admission of Mr. Valdez's 1st set of discovery), MTC 41 – 42 (# 2 -5 interrogatories,  Mrs. Valdez's 2nd set of discovery).  The responses also limit the responses to Cavalry's communications with plaintiffs themselves. These objections are without basis. Indeed, the reverse is true. One of the core issues of the case is which debt collector knew what and when, and how that knowledge was conveyed (or failed to be disclosed). Therefore, any communication regarding the alleged debt or plaintiffs is not only relevant but essential to establish notice. This is the core of the case. For example, if eight years ago plaintiffs informed Cavalry that Mr. Valdez was the victim of identity theft, then Cavalry would have violated the FDCPA or the Texas act if it failed to disclose that dispute when it referred that debt out to be collected by a co-defendant. Further, discoverable communications are not properly limited to plaintiffs alone, because one of the key claims is what Cavalry in fact did or did not say to the other defendants. Indeed, the agreement permitting Cavalry to late file discovery answers was premised on the production of documents reflecting the communications between Cavalry and the other defendants. The court should overrule these objections and compel fully responsive answers, even if more than 2 years from the date of the filing of this suit.

### H.    Compelling interrogatory answers to Mr. Valdez's First Set of Discovery

26. Cavalry did not identify all persons with knowledge of relevant facts. MTC 10 (# 1

---

officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you, that constitute or contain matters relevant to the subject matter of the action.

interrogatory, Mr. Valdez's 1st set of discovery). Cavalry did not object to the request. It simply did not fully answer the requests. It lists no fact witnesses with Cavalry. The answer should be compelled as to all persons at Cavalry with knowledge of relevant facts, and the address where they can be served with a subpoena for deposition.

27. Cavalry objected to each of the interrogatory requests in Mr. Valdez's First Set of Discovery after interrogatory number 7, claiming subsequent requests exceed the limit of 25 interrogatories. [MTC 13 – 17]. This is not possible under any calculation. Requests # 1- 6 are one sentence each, and # 7 is two sentences. Even if the requests had subparts (which they did not), the subparts do not constitute separate requests if they are logically or factually related to the primary interrogatory. For example, it is difficult to imagine subparts that are more logically related than those in interrogatory 8, which ask about the dates of the representations, names of the person making the representations, and what was said. See, e.g., Williams v. Board of County Com'rs of Unified Government of Wyandotte County and Kansas City, Kan.,192 F.R.D. 698 (D.Kan.2000).   Cavalry asserts that interrogatory # 7,[16] requesting the basis for Cavalry's affirmative defenses, including bona fide error, "alone constitutes no fewer than thirty-nine discreet subparts, when Defendant's thirteen affirmative defenses have been considered." This argument fails for a number of reasons. First, the request asks one discovery request: the basis for their affirmative defense. The name of the persons with knowledge of the defense and the nature and location of the documents upon which the affirmative defense is raised could not be more integrally related to the request. Second, while Cavalry's answer [DE 14] purported to raise

---

16   Interrogatory # 7: What is the legal and factual basis of your affirmative defenses in this case, including bona fide error? What is the nature and location of the documents upon which you base your assertion and what is the name, title and contact information for the person or persons with knowledge of the legal and factual basis for your affirmative defenses, including bona fide error.

thirteen affirmative defenses, in fact only two of the "affirmative defenses" (the fifth and seventh) are actually an "affirmative defense" under F.R.C.P. 8(c)(1), and one (the sixth) is an affirmative defense under the FDCPA itself. Third, Cavalry answered no part of interrogatory # 7 whatsoever. By its own argument, some of the "thirty-nine discreet subparts" must be answered; Cavalry has answered none. Fourth, it should be noted, no other defendant in this case found these requests objectionable based on the number of subparts.

28. In the alternative, should the court rule in favor of Cavalry on the subparts issue, plaintiffs move for leave of court to authorize interrogatories number 7 - 15 in plaintiff Mr. Valdez's first set of discovery to be propounded, regardless of the issue of subparts.

29. Interrogatories 8 – 15 ask questions that go to the core of the case. Cavalry has objected to all of the requests based on the number of interrogatories and, to the degree any answer is made, the answer is nonresponsive. Cavalry also quibbles as to the discovery request defining "fraudulent debt" as the debt for which defendants sought to collect. Cavalry makes no other objections to these requests. The court should overrule the objections and compel fully responsive answers.

30. Interrogatory 8 asks for Cavalry's communications with others (including co-defendants) regarding plaintiffs or the alleged debt.[17] The very core of this case is which debt collector knew what and when, and how that knowledge was conveyed (or withheld).

---

17  Interrogatory # 8.  For any communication you had or attempted to have with anyone  regarding the fraudulent debt or either Plaintiff, please state:
      a.      State the date and time each communication;
      b.      What was stated in each communication;
      c.      State the name, title and contact information for the person or persons who made each communication, and the company, if any, each person was making the communication on behalf of;
      d.      What actions, if any were made in response to the communication;

31. Interrogatory 9  asks what steps, if any, were taken in response to Mr. Valdez's claims of fraud.[18]   Cavalry does not answer.

32. Interrogatory 10 asks whether Cavalry contends Mr. Valdez owes the alleged debt or not, and the basis for the assertion. This is a yes or no question. Cavalry attempts to dance around the question by asserting that it has made no contention "in this litigation" whether plaintiff owes "any fraudulent debt." This is non-responsive. Cavalry needs to state, yes or no, whether its position is that Mr. Valdez owes the alleged debt.

33. Interrogatory  11 asks the name of each entity from the original creditor until today who, to Cavalry's knowledge, claimed a right to collect the debt. Cavalry does not state the nature and location of the documents it asserts gives the various entities the right to collect the alleged debt. Interrogatory 12 simply asks who was involved in answering the discovery requests.

34. Interrogatory 13 asks if there are any documents to Cavalry's knowledge that existed at one time but have passed out of existence, the circumstances of the disappearance, and persons with personal knowledge of these circumstances.[19]   This is key because Cavalry's case notes indicate it pulled one or both of plaintiffs' credit reports, but it has not produced the reports(s). The case

---

18  Interrogatory # 9.   What actions did you take or, to your knowledge, any co-defendant, creditor, debt collector, servicer or assignee take, to determine that the FRAUDULENT DEBT was actually created by Plaintiff and owed by Plaintiff, and was not a debt incurred by someone who stole Plaintiff's identity. Specifically:
      a.      State the date and time each action was taken and what the action was.
      b.      State the name, title and contact information for the person or persons with knowledge of said actions.
      c.      State the nature and location of the documents upon which you base your assertion;
19  Interrogatory 13. For any requested information about a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located, and the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss, and identify each document evidencing the existence or nonexistence of each document that cannot be located.

notes also indicated that Cavalry has email correspondence, letters, and faxes that Cavalry has failed to produce.  Cavalry simply states it has "no responsive documents" to the request, a non sequitur.

35. Interrogatory 14 asks from an itemization of when Cavalry contends plaintiffs disputed the debt and what actions, if any, were taken in response to each dispute.[20]  It specifically asks for the names and addresses of the persons who took the actions. This would allow plaintiffs to subpoena the deposition of these fact witnesses. Cavalry does not answer the request.

36. Interrogatory 15 asks for the basis of Cavalry's claim of "bona fide error." Cavalry does not answer.

## I.     Deeming or, in the alternative, compelling responses to requests for admission

37. Cavalry has evasively responded to the following requests for admission and the court should therefore deem the answers admitted.

38. Specifically, below is Cavalry's response to request for admission # 14 of Mr. Valdez's 1st Set of Discovery:

RFA 14.  You did not tell CMS you received from Mr. Valdez an affidavit stating the fraudulent debt was the result of the theft of his identity, a police report regarding the theft of his identity, and a copy of his driver's license.

Response: CAVALRY PORTFOLIO SERVICES, LLC admits that an affidavit claiming

---

20  Interrogatory 14. Each time either Plaintiff disputed to you owing the FRAUDULENT DEBT, state what actions, if any, you took in response to the dispute; the date and time of the actions; identify each person who took these actions or who has knowledge the actions were taken; the name, title and contact information for the person or persons with knowledge of said actions; and the nature and location of the documents upon which you base your assertion.

fraud was received from the Plaintiff's counsel along with other certain documentation, including an unexecuted and unwitnessed police report, and an illegible copy of what appears to be a driver's license. To the extent otherwise, CAVALRY PORTFOLIO SERVICES, LLC denies that it has knowledge or information sufficient to respond to this requests, and therefore denies.

39. Cavalry knows whether or not it told CMS that Mr. Valdez provided Cavalry these specific documents. Cavalry's response is evasive and should be deemed admitted.

40. In response to Mr. Valdez's requests for admission # 9 – 12, 17 [MTC 19, 20] Cavalry has "self-adjudicated" that it may limit its response to two years from the filing of this complaint. Cavalry unilaterally claims anything prior to that time is irrelevant. See, also MTC 41 – 42 (# 2 - 5 interrogatories, Mrs. Valdez's 2nd set of discovery). These objections are without basis. Indeed, the reverse is true. One of the core issues of the case is which debt collector knew what and when, and how that knowledge was conveyed (or failed to be disclosed). Therefore, any communication regarding the alleged debt or the plaintiffs is not only relevant but is essential to establish notice. This is the core of the case. For example, if eight years ago plaintiffs informed Cavalry that Mr. Valdez was the victim of identity theft, then Cavalry would have violated the FDCPA or the Texas act if it failed to disclose that dispute when it referred that debt out to be collected by a co-defendant. Indeed, many of the *fifty-two* requests for admission that Cavalry has propounded on plaintiff Mr. Valdez relate to a time period more than 2 years from the date of the filing of this lawsuit.

## J.   Compelling answers to Mrs. Valdez's discovery requests.

41. Cavalry has objected to virtually every interrogatory request of Mrs. Valdez, stating that the request was overbroad, unduly burdensome and harassing. Boilerplate objections waive all

- 18 –

objections, even otherwise valid objections. Therefore, the court should overrule all of Cavalry's objections and order Cavalry to fully answer the interrogatories. Specifically, this applies to MTC 41 – 43 (# 2 – 7 interrogatories of Mrs. Valdez's 1st set of discovery); MTC 53 (# 1 interrogatory, Mrs. Valdez's 2nd set of discovery). To the extent that the court does not grant this request, the court should compel the following specific responses to Mrs. Valdez's discovery requests.

42. Cavalry did not answer responsively the request as to the full name, address and title of the persons referenced in its "case notes"[21] except as to the plaintiffs, their family members and their counsel. Cavalry also did not identify the nature and location of the documents referenced in the case notes. MTC 39 (#1 interrogatory, Mrs. Valdez 1st set of discovery). The case notes make reference to several documents, the nature and location of which are not disclosed. For example, the notes make reference to credit pulls, letters disputing the alleged debt, letters and faxes sent by Cavalry regarding the alleged debt, and emails regarding the alleged debt. Cavalry makes no objection to the request. The full name and address of the persons is particularly important as plaintiff has attempted to notice the depositions of these persons, but Cavalry has objected that plaintiffs' deposition notice was defective as it must name the individual person and subpoena that individual.  The court should order Cavalry to fully answer.

43. Cavalry does not answer *whatsoever* the interrogatory regarding communications with co-defendants regarding the alleged account.[22] MTC 41(# 2 interrogatory, Mrs. Valdez's 1st set of

---

21 "Case notes" are also referred to as "account notes." <u>See</u> MTC 60 – 63 (documents produced by Cavalry under the term "account notes."
22  <u>Interrogatory # 2</u>. For any communication you had with any co-defendant regarding the fraudulent debt or either Plaintiff up to the date of the filing of this federal lawsuit, please state:

discovery.)

44. Cavalry's position stated to plaintiffs' counsel is that their answers to Mrs. Valdez's discovery requests are limited to information related to Mrs. Valdez alone, and not to co-plaintiff Mr. Valdez. This has also been Cavalry's response to the following discovery requests: MTC 41 (# 3 request for production. Mrs. Valdez's 1st set of discovery); MTC 39 (# 1 interrogatory, Mrs. Valdez's 2nd set of discovery); MTC 41 (# 3 interrogatory, Mrs. Valdez's 2nd discovery). There is nothing in the text of the request that limits the request simply to one plaintiff and not the other. Plaintiffs request an order clarifying that, unless the discovery request specifically limits the request to one plaintiff or the other, that the response must not be limited to one plaintiff or the other.

45.    Cavalry has entirely refused to answer an interrogatory making specific inquiries of the basis for Cavalry's generalized claim of "privilege" for the documents it is withholding. MTC 43 (# 7 interrogatory, Mrs. Valdez's 1st set of discovery). This interrogatory needs to be fully answered even if the documents are ultimately produced with the agreed protective order in order for plaintiffs to have enough information to know whether to challenge the basis for designating documents confidential.  For example, item 7(d) asks whether, to your knowledge, the document that Cavalry is claiming is privileged "has been produced in discovery without a protective order in a prior case." If the material has been previously produced without a protective order then it is

---

a.    State the date and time each communication;
b.    What was stated in each communication;
c.    State the name, title and contact information for the person or persons who made each communication, and the company, if any, each person was making the communication on behalf of;
d.    What actions, if any were made in response to the communication; and
e.    The nature and location of the documents that reflect those communications.

not an item for which protection can be claimed under the agreed protective order. [DE 41 § 10].

**K.** **Defendants actions are needlessly increasing attorney's fees,**
**an issue relevant in a fee petition should plaintiffs prevail on**
**liability**

46.      Defendants have every right to vigorously litigate this FDCPA case, and to make as many objections to discovery it thinks are appropriate. Plaintiff does not take issue with that. However, the FDCPA is a fee-shifting statute. If plaintiffs prevail, they will file a petition for attorney's fees and costs. At that point, defendants' objections to discovery, and to time necessary to respond to those objections, will become relevant. Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response." See Copeland v Marshall, 641 F2d 880, 904 (DC Cir 1980) (en banc), citing Wolf v Frank, 555 F2d 1213, 1217 (5th Cir 1977) ("Obviously, the more stubborn the opposition the more time would be required" by the other side); Perkins v New Orleans Athletic Club, 429 F Supp 661, 667 (ED La1976) ["Those who elect a militant defense ... (are responsible for) the time and effort they exact from their opponents"]. "While [defendant] is entitled to contest vigorously [plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1575 (11th Cir. 1985). The F.D.C.P.A. is a remedial statute, so substantial attorney's fees may be justified regardless of the amount of the award of statutory or actual damages if the Defendant chooses in good faith to vigorously litigate the case.  See Loggins v. Delo, 999 F.2d 364, 368 (8th Cir. 1993)($25,000.00 attorney's fee award for recovery of $102.50 in actual damages; defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.")

## L.    Prayer

47. For these reasons, Plaintiff moves for the court to grant this motion, to compel the discovery requested, and for all relief in law and equity which plaintiffs may be entitled. As the documents are already in the possession of counsel for defendants and as the parties are seeking to arrange depositions in the next few weeks, plaintiffs seek an order compelling amended responses and production within 3 days of the court's order on this motion.

## M.    Certificate of Conference

48. Counsel for plaintiffs have repeatedly conferred in good faith to attempt to resolve these matters without the necessity of court intervention, but those efforts have failed. Documents reflecting the attempts to confer are attached as exhibits and incorportated by reference.  MTC 149 – 179 (attempts to confer with Cavalry), MTC 180 – 187 (attempts to confer with NAFS).

49. Specifically, plaintiffs have conferred as follows:

## Attempts to confer with Cavalry

| Date | Item |
|------|------|
| 2/8/2010 | Call to Amy Mitchell. Went through discovery concerns. Set up time to speak again when she had more time. |
| 2/9/2010 | Compared documents of Cavalry to the answers of the other defendants and noted discrepancies.  Call to opposing counsel for Cavalry regarding discovery concerns. Left message. Drafted detailed letter outlining concerns and requesting amendment of responses by the end of the week, and served. |
| 2/10/2010 | Reviewed response of attorney for Cavalry to our discovery letter. Drafted response and sent. |
| 2/11/2010 | Reviewed email correspondence from opposing counsel for Cavalry. They will not respond on the merits to our prior requests to comply with our discovery agreement or with the prior order of the court regarding financial disclosures. |
| 2/11/2010 | Research on issue raised by attorney for Cavalry that they can self-adjudicate whether they need to disclose an insurance policy. Letter to Cavalry with 3rd attempt to confer regarding discovery. |

| 2/12/2010 | Correspondence with opposing counsel for Cavalry regarding discovery. |
|---|---|
| 2/16/2010 | Letter to opposing counsel for Cavalry regarding issues raised in prior letter. |
| 2/22/2010 | Reviewed again original responses of Cavalry to our first set of discovery requests. Call to opposing counsel to discuss. Left message. Emailed said counsel to set up time to discuss. |
| 2/22/2010 | Drafted 2nd set of discovery requests to Cavalry based no non-responsiveness of prior answers and served. |
| 2/23/2010 | Correspondence with attorney for Cavalry regarding amending their discovery responses, and requesting setting aside a time to speak about the same. |
| 2/24/2010 | Emails with attorney for Cavalry. I requested time to speak with her. Attorney for Cavalry stated in email she will not discuss the matters with me on the phone and to put all discovery concerns in writing In response, I drafted detailed, six page single space letter to Cavalry outlining discovery concerns. Indicated to opposing counsel in letter that if she would simply take my call we could discuss these issues in advance to narrow the issues in dispute so we did not need to spend so much time on discovery issues. |
| 3/3/2010 | Call to opposing counsel for Cavalry regarding their amending discovery requests as per my letter of February 24, 2010. Letter to opposing counsel regarding the same. |
| 3/4/2010 | Call to attorney for Cavalry regarding their inadequate discovery responses. Attempted to reach agreement on at least some matters to narrow the issues in dispute, but was unable to. Opposing counsel indicated she would respond to our letters itemizing our concerns by Monday March 8, 2010. She said she would not withdraw the objections as to documents prior to 2008. She went back and forth. First. she said it was not relevant, then I indicated it depended on what the document said, such as whether the account was disputed. Then she stated that there are no documents from then. I indicated if that was the case then she should withdraw her objections to producing before 2008. She said she would not. Went around in circles on this. I raised the issue of the date transfers between Cavalry and the other defendants and she said there were no records of that other than the case notes which end prior to the account being referred to the other defendants.  I asked about the documents referenced in their own case notes (such as scanned dispute); she said she gave everything they had.  I asked whether by co-maker on the case notes whether they meant the Mrs. Valdez. She said it was not relevant and asked for a reason. First I indicated it was within the statute of limitation for FCRA claim by wife, which is a discovery rule. Then I indicated again it depended what the report said, whether it said the account was disputed. |
| 3/8/2010 | Letter to counsel for Cavalry regarding discovery. Inquired why they had not provided amended discovery by today as previously demanded. Offered an until March 12, 2010 to provide amended answers if they stated in writing by March 9, 2010 that they will be amending. |
| 3/9/2010 | Reviewed amended financial disclosures of Cavalry, and compared to order as to scope of disclosures. Noted that they still have not listed Cavalry SPV II, LLC, the owner of the debt, as financially interested in the outcome of this litigation. |
| 3/10/2010 | Received 38 pages of discovery requests from Cavalry. |

| | |
|---|---|
| 3/11/2010 | Reviewed letter from associate counsel Matthew Scholes at firm for Cavalry regarding discovery. Lengthy call to said counsel regarding the same. He indicated that he had received that day an additional "400 documents" from Cavalry. He requested an extension of their answers to our 2nd set of discovery due on March 29, 2010, and also indicated he would serve amended answers to our 1st set of discovery by March 19, 2010. I indicated if he would simply produce the additional documents I would give an extension on the formal answers. He indicated that he would check with the lead counsel, Ms. Mitchell, and let me know. |
| 3/16/2010 | Call to attorney for Cavalry. They will not state which objections, if any, they will be withdrawing. They will not state if any of the objections will be withdrawn. They stated the number of documents were "no where near" 400, and that they include a copy of the lawsuit in this case that was sent to their client. |
| 3/22/2010 | Call to lead counsel for Cavalry. Left message. |
| 3/22/2010 | Call to associate counsel for Cavalry, Matthew Scholes, at 9:00 AM regarding discovery. I went through the main issues I previously raised in my correspondence regarding discovery, and he indicated they would not be amending as to those issues. Drafted letter confirming the same and gave a final extension to the end of the day to amend. |
| 3/24/2010 | Reviewed Cavalry's amended answers to our 1st set of discovery. |
| | |

50. Documents reflecting the attempts to confer are attached as exhibits and incorporated by

referenced.

**Attempts to confer with NAFS**

| Date | Item |
|---|---|
| 1/26/2010 | Call to attorney for NAFS. Discussed the deficiencies in their answers to plaintiffs discovery requests. |
| 2/8/2010 | Call to attorney for NAFS to discuss the specific issues of concern I had and attempted to reach agreement to amend the discovery responses as to those items. |
| 2/9/2010 | First letter to attorney for NAFS itemizing discovery concerns and requesting they amend responses to discovery by February 16, 2010. |
| 2/16/2010 | 2nd letter to opposing counsel for NAFS regarding failure to amend discovery responses as requested in letter of 2/9/2010. Call to opposing counsel regarding the same. Email to opposing counsel regarding the same, offering an additional two days to provide the requested information. |
| 2/19/2010 | Call to attorney for NAFS regarding discovery; left message. Email to opposing counsel regarding the same. Agreement with opposing counsel to discuss the issues via telephone at 11:00 AM CST on 2/22/2010. |
| 2/22/2010 | Call to attorney for NAFS regarding discovery. He requested a resetting, so we reset |

- 24 –

| | conference call regarding discovery to the next week. He indicated he would amend the discovery responses prior to the next call. |
|---|---|
| 3/2/2010 | Call to attorney for NAFS; discussed their amending answers to our discovery requests  as per our letter of 2/24/2010 and as per his representation of 2/22/2010. Counsel for NAFS indicated he would amend the discovery responses. |
| 3/3/2010 | Call to attorney for NAFS; discussed their amending answers to our discovery requests .  He indicated he would be amending his discovery responses. |
| 3/15/2010 | 3rd letter to attorney for NAFS regarding discovery deficiencies. |

**Attempts to confer with all defendants**

| Date | Item |
|---|---|
| 4/7/2010 | Drafted proposed protective order and circulated to opposing counsels. Attempted to reach agreement of production of documents being withheld by all defendants based on claims of confidentiality, etc. |
| 4/8/2010 – 4/15/2010 | Calls and emails to opposing counsels seeking to reach agreement to production based on entry of protective order. |
| 4/20/2010 | Call to attorney for CMS. He confirmed that Cavalry was still objecting CMS producing the contract with Cavalry based on the confidentiality agreement in the contract. |

Respectfully submitted,
/s/
Ahmad Keshavarz
*ATTORNEY IN CHARGE*
THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
Email: ahmad@AustinConsumerAttorney.com
State of Texas Bar Number: 24012957
Southern District of Texas Bar Admission Number: 27001

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Last printed 4/21/2010 9:49:00 PM

Defendants Capital Management Services, LP dba Capital Receivables
Management Services, LP and CMS General Partner LLC
By and through their attorney of record
David C. Sander
Attorney-in-Charge
SCANLAN, BUCKLE & YOUNG, PC
602 West 11th Street
Austin, TX 78701
Phone: (512) 478-4651
Fax: (512) 478-7750
E-mail: dsander@sbylaw.com

Defendant CAVALRY PORTFOLIO SERVICES, LLC
By and through their attorney of record
Amy L. Mitchell
Attorney-in-Charge
MITCHELL & DUFF, L.L.C.
210 Main Street
Richmond, Texas 77469
Phone: (281) 341-1718
Fax: (281) 341-5517
Email: amitchell@mitchellandduff.com

Defendants National Action Financial Services Inc and Hartford Fire Insurance
Company:
By and through their attorney of record
Javier Gonzalez
Attorney in Charge
Of Counsel
Royston, Rayzor, Vickery & Williams, LLP
55 Cove Circle
P.O. Box 3509
Brownsville, TX 78521
Phone: (956) 542-4377
Fax: (956) 542-4370
Email: Javier.Gonzalez@roystonlaw.com

Signed: April 21, 2010.
/s/
Ahmad Keshavarz
*ATTORNEY IN CHARGE FOR PLAINTIFFS*

Last printed 4/21/2010 9:49:00 PM